ESTATE OF MARY R. DONALD, DECEASED, SCOTT SCAMMELL, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 97787, 99798, 103373.  Promulgated March 25, 1941.

*Scott Scammell, Esq.*, and *John Hall Forbes, Esq.*, for the petitioner.

*Sidney U. Hiken, Esq.*, and *William G. Ruymann, Esq.*, for the respondent.

1116

1119

## OPINION.

Murdock: Scott Scammell has attempted to differentiate between the services rendered by him to the estate as executor and those which were separate from and in addition to services rendered in discharge of his duties as executor. He regards the latter as services performed in managing the estate, for which he was paid the annual fee of $6,000. He claims that these extra-executorial services were rendered in connection with the conduct of a business by the estate and payment for those services represented ordinary and necessary expenses of the operation of that business. Although the Commissioner does not regard the $6,000 as an excessive amount for the services rendered, nevertheless, he has disallowed the annual deductions and defends his action upon the ground that the payments were not ordinary and

necessary expenses paid in the operation of any business within the meaning of section 23 (a) of the Revenue Acts of 1934 and 1936.

The petitioner, to overcome this determination, would have to show not only that the estate was engaged in the operation of some business during the taxable years, but also that all or some ascertainable part of the $6,000 was paid as an ordinary and necessary expense of that business. The only authority which Scammell has for continuing the estate is the tacit consent of his wife and her sister, the surviving residuary legatees. While this circumstance may be more or less immaterial, it does not reduce the difficulties of his attempt to divide his services into the two classifications. Although Scammell has attempted to describe his extra-executorial duties in some detail, his differentiation is not entirely satisfactory. It seems clear that some of the services for which he says the fee of $6,000 was paid were in fact services which an executor would be expected to perform in the ordinary discharge of his duties. Thus, at the very beginning, it is apparent that not all of the $6,000 fee can be attributed to extra-executorial services.

Merely keeping records, collecting interest and dividends, and keeping funds invested through managerial attention does not constitute the operation of a trade or business within the meaning of section 23 (a), no matter how large the estate or how continuous or extended the work required may be. *Higgins* v. *Commissioner*, 312 U. S. 212; *White Trust* v. *Commissioner*, 119 Fed. (2d) 619; *City Bank Farmers Trust Co.* v. *Commissioner*, 112 Fed. (2d) 457; *Miller* v. *Commissioner*, 102 Fed. (2d) 476; *Kane* v. *Commissioner*, 100 Fed. (2d) 382; and *Bedell* v. *Commissioner*, 30 Fed. (2d) 622. This rule is applied in the foregoing cases not only to individuals but also to fiduciaries, and it applies here. Approximately 90 percent of the assets of this petitioner were represented by marketable stocks and bonds. The petitioner, in so far as it was engaged in keeping account of those funds, collecting interest and dividends therefrom, and investing the funds, was not engaged in the operation of any business within the meaning of section 23 (a). Consequently, in so far as the annual fee of $6,000 was paid for those services, it was not deductible. Furthermore, it appears from this record that a very large part of the fee was paid for those services or would have to be allocated thereto.

The petitioner argues that it took an active part in the management and operation of several corporations in which it had large investments and those activities constituted the carrying on of a business, citing *Washburn* v. *Commissioner*, 51 Fed. (2d) 949; *Foss* v. *Commissioner*, 75 Fed. (2d) 326. The court held that Washburn, who had an office with a complete organization and gave personal attention to and participated in the management of various companies not merely for

the purpose of conserving his investments but of carrying on the companies successfully and making them profitable, was thus engaged in business. The court in the *Foss* case said that Washburn's activities closely resembled those of Foss and held, following the *Washburn* case, that Foss, who was a majority owner of stock of the American Blower Co. and participated in the management, was thereby engaged in business. Some courts have taken the view that the *Washburn* case has been overruled by subsequent decisions of the Supreme Court. See *McGinn* v. *Commissioner*, 76 Fed. (2d) 680; *duPont* v. *Deputy*, 22 Fed. Supp. 589; *White Trust* v. *Commissioner*, *supra*. If the *Washburn* case was overruled, no doubt, the *Foss* case was also overruled. Since the Supreme Court has decided *Deputy* v. *duPont*, 308 U. S. 488, and *Higgins* v. *Commissioner*, *supra*, there would seem to be even greater reason to think that the *Washburn* and *Foss* decisions do not correctly state the law. However, there may be some doubt about this and, consequently, we shall consider the extent, if any, to which the facts in this case parallel the facts in those cases.

The petitioner may rely upon its activities in connection with the following assets: Evans mortgage, Belle Mead Sweets note and stock, Hamilton Investment Co. common stock, Merchants Refrigerating Corporation common and preferred, Richey, Browne & Donald, Inc., mortgage and preferred stock, S. L. Allen & Co. stock, and Chateau D'Armes Realty Corporation stock. The evidence indicates that the activities of the petitioner in connection with most of these investments were merely for the purpose of conserving them, rather than for the purpose of using the corporations as an outlet for investing its funds by carrying on a successful and profitable business through those corporations. The petitioner, apparently, was only trying to save a few burnt chestnuts in most of these instances. None of the corporations, with the exception of the Chateau D'Armes Realty Corporation, could be regarded as the *alter ego* of the petitioner. Thus, most of these activities would not meet the test of the *Washburn* case.

There was no corporation connected with the Evans mortgage, and Scammell's activities in connection with that mortgage were those of an executor trying to collect on a debt due the decedent's estate. The determination of the Commissioner, as well as the testimony of Scammell and the records of the estate, would indicate that the entire investment of the petitioner in Belle Mead Sweets was lost prior to the beginning of the taxable years. Furthermore, the company was in bankruptcy in 1935 and may have been in bankruptcy even before 1935. Scammell's activities in connection with the business of that company did not represent the carrying on of a business by this petitioner. Scammell successfully opposed the liquidation of the Hamilton Investment Co. in 1935, and he was

active in eliminating some internal friction in the Merchants Refrigerating Corporation, but those efforts would not bring this case within the *Washburn* and *Foss* cases.

The petitioner had a mortgage of $10,000 on property of Richey, Browne & Donald, Inc., and held 85 percent of the preferred stock of that corporation. Scammell was a director and took part in the conduct of the business. The petitioner owned some of the preferred stock of S. L. Allen & Co. and it had some hold on the voting control stock. Scammell consulted with his brother, who was president of the corporation, and discussed with him various problems relating to the operation of the business in an effort to increase its profits so that it might pay the past dividends on its cumulative preferred stock. The petitioner was not using either of these corporations to carry on any business for profit, but interested itself in their affairs only for the purpose of preserving its investment in them.

This leaves for consideration the activities of the petitioner in the affairs of the Chateau D'Armes Realty Corporation. The Chateau D'Armes Realty Corporation stock was valued for estate tax purposes at $498 and has since been carried at that same value. It was organized to hold a second mortgage on an apartment building. The second mortgage had been received by the decedent as part payment for a farm. The record does not show just how the stock of the Fort Washington Avenue Realty Corporation was held. Assuming that the activities of the petitioner in connection with Chateau D'Armes Realty Corporation bring it within the *Washburn* case, what part, if any, of the $6,000 compensation paid to Scammell during each of the taxable years could be allocated to his services in connection with the activities of this corporation? The entire investment of the petitioner in the stock of this company was valued at only $498 at the time the decedent died and during the taxable years. The record does not justify the allocation of more than an insignificant portion of the $6,000 fee to these activities. Thus, under no circumstances could the determination of the Commissioner in disallowing the annual deduction of $6,000, be disturbed.

The amounts paid to the certified public accountants and the amount paid for a copy of the record of a proceeding before the Board were incidental to the ordinary administration of the estate. *George W. Oldham et al., Executors*, 36 B. T. A. 523. They have not been shown to be ordinary and necessary expenses of any business carried on by the petitioner.

*Decision will be entered under Rule 50.*